Vickie L. Driver
State Bar No. 24026886
Alexandra P. Olenczuk
State Bar No. 24033924
Courtney J. Hull
State Bar No. 24061297
**Coffin & Driver, PLLC**
7557 Rambler Road, Suite 110
Dallas, Texas 75231
Telephone: 214.377.4848
Facsimile: 214.377.4858
Email: vdriver@coffindriverlaw.com
Email: aolenczuk@coffindriverlaw.com
Email: chull@coffindriverlaw.com

COUNSEL FOR DEBTOR

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § § | |
| MARGAUX ORO PARTNERS, LLC, | § § | CASE NO. 11-30337-SGJ-11 |
| Debtor. | § § § § | CHAPTER 11 |

## AMENDED MOTION FOR AN ORDER (1) AUTHORIZING FINAL USE OF CASH COLLATERAL PURSUANT TO SECTIONS 105, 361, 362, 363 AND 364 OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001(B), (2) AUTHORIZING THE DEBTOR TO OBTAIN POST PETITION FINANCING PURSUANT TO 11 U.S.C. § 364, (3) GRANTING LIENS AND SUPER-PRIORITY ADMINISTRATIVE EXPENSE STATUS, AND (4) GRANTING <u>ADEQUATE PROTECTION TO THE PRE-PETITION SECURED LENDER</u>

TO THE HONORABLE STACY G. JERNIGAN UNITED STATES BANKRUPTCY JUDGE:

Margaux Oro Partners, LLC ("Oro Partners" or the "Debtor"), debtor and debtor-in-possession, hereby submits this motion (the "Motion") pursuant to Sections 105, 361, 362, 363 and 364 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et. seq.* (the "Bankruptcy Code"), and Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), seeking an order from the Court (1) authorizing the Debtor to obtain post-petition financing pursuant to 11

U.S.C. § 364 from Wells Fargo Bank, N.A. ("Lender"); (2) granting certain liens and super-priority administrative expense status to Lender (including, as specifically set forth herein, an administrative priority claim pursuant to Section 364(c)(1) of the Bankruptcy Code, liens pursuant to Sections 364(c)(2) and (3) of the Bankruptcy Code and priming liens pursuant to Section 364(d) of the Bankruptcy Code); (3) authorizing the final use of cash collateral, pursuant to sections 105, 361, 362, 363 and 364 of the Bankruptcy Code and Bankruptcy Rule 4001(b); and (4) granting adequate protection to the pre-petition secured lender. In support of this Motion, the Debtor respectfully represents as follows:

## I. BANKRUPTCY RULE 4001 CONCISE STATEMENT

1. By this Motion, the Debtor requests entry of a proposed final order in substantially the form attached hereto as **Exhibit "A"** (the "Order")[1] authorizing the Debtor:

   i. To obtain post-petition financing pursuant to Sections 363 and 364 of the Bankruptcy Code pursuant to the terms set forth in the Term Sheet attached hereto as **Exhibit "B,"** by and between the Debtor and the Lender (the "Term Sheet");[2]

   ii. To grant first priority security interests and liens to and on behalf of and for the benefit of the Lender in and on all Collateral, as defined in Exhibit A, to secure the DIP Obligations; and

   iii. To obtain post-petition loans and financing in an aggregate amount not to exceed $587,647.36 (in addition to amounts of cash collateral permitted to be used by the Debtor).

2. An overview of the provisions of the proposed debtor-in-possession financing are summarized as follows and set forth in the following sections of the Term Sheet and/or the Order:

---

[1] The Debtor expects the final entered Order will be in substantially the form attached hereto. The Order remains subject to further review and editing by the Debtor and Creditors prior to the hearing.

[2] Any capitalized terms not defined herein are as defined in the Order and the Term Sheet.

**EXPEDITED MOTION FOR AN ORDER (1) AUTHORIZING THE DEBTOR TO OBTAIN POST PETITION FINANCING PURSUANT TO 11 U.S.C. § 364, (2) GRANTING LIENS AND SUPER-PRIORITY ADMINISTRATIVE EXPENSE STATUS, (3) AUTHORIZING THE FINAL USE OF CASH COLLATERAL PURSUANT TO SECTIONS 105, 361, 362, 363 AND 364 OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001(B), AND (4) GRANTING ADEQUATE PROTECTION TO THE PRE-PETITION SECURED LENDER – PAGE 2**

a. <u>Borrowers</u>: The Debtor (Margaux Oro Partners, LLC). *See* Term Sheet, at Page 1.

b. <u>Lender</u>: The Lender (Wells Fargo Bank, N.A.). *See* Term Sheet, at Page 1.

c. <u>Commitment</u>: A maximum aggregate amount of up to $587,647.36 or such other amount as provided in the Term Sheet. *See* Term Sheet, at Page 1.

d. <u>Termination Date</u>: The DIP Facility shall terminate on the earliest to occur of: (a) the date which is 180 days after the Effective Date, subject to extension by written agreement of the Post-Petition Lender; (b) the consummation of a sale of substantially all of the Debtor's assets; (c) the acceleration of the DIP Loan after the occurrence of an Event of Default (as hereinafter defined); (d) the effective date of any plan of reorganization; (e) conversion of the Debtor's bankruptcy case to a case under chapter 7 of the Bankruptcy Code; (f) dismissal of the Debtor's bankruptcy case; or (g) the appointment of a chapter 11 trustee, or an examiner with expanded powers, without the Post-Petition Lender's consent (in any case, the "Maturity Date"). *See* Term Sheet, at Pages 1-2.

e. <u>Interest</u>: Daily LIBOR + 2.10% (the "Pre-Default Rate") payable monthly and on the Maturity Date or upon acceleration. After an Event of Default, the rate shall be the Pre-Default Rate plus 3% (the "Default Rate"). *See* Term Sheet, at Page 2.

f. <u>Priority and Liens</u>: The DIP Loan will be secured by first priority security interests and liens granted pursuant to section 364(c)(2) and (d)(1) of the Bankruptcy Code (the "DIP Liens") in and on all real and personal property (including all proceeds, products, rents, revenues and profits thereof) of the Debtor and the Debtor's bankruptcy estate, whether tangible or intangible, whether now existing or hereafter acquired, and whether encumbered or unencumbered as of the Petition Date (the "Collateral"). The DIP Liens shall be valid and enforceable notwithstanding any infirmity, avoidance, or other issue making the Pre-Petition Lender's liens unenforceable.

The DIP Loan shall have superpriority under the provisions of section 364(c)(1) of the Bankruptcy Code over all administrative expenses incurred in the Debtor's bankruptcy case.

*See* Term Sheet, at Page 3.

**EXPEDITED MOTION FOR AN ORDER (1) AUTHORIZING THE DEBTOR TO OBTAIN POST PETITION FINANCING PURSUANT TO 11 U.S.C. § 364, (2) GRANTING LIENS AND SUPER-PRIORITY ADMINISTRATIVE EXPENSE STATUS, (3) AUTHORIZING THE FINAL USE OF CASH COLLATERAL PURSUANT TO SECTIONS 105, 361, 362, 363 AND 364 OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001(B), AND (4) GRANTING ADEQUATE PROTECTION TO THE PRE-PETITION SECURED LENDER – PAGE 3**

g. Adequate Protection: To the extent of any diminution in value or usage of the collateral pledged pursuant to the Pre-Petition Loan Documents, the Pre-Petition Lender shall be granted adequate protection replacement liens and security interests in the Collateral, subject only to the DIP Liens granted in such assets to secure the DIP Loan (the "Adequate Protection Liens"). Such Adequate Protection Liens shall not attach to avoidance actions or the proceeds thereof under chapter 5 of the Bankruptcy Code. To the extent the Adequate Protection Liens are insufficient to adequately protect any interest of the Pre-Petition Lender, the Pre-Petition Lender shall be granted a superpriority administrative expense claim and all of the other benefits and protections allowable under section 507(b) of the Bankruptcy Code.

As additional adequate protection, the Debtor shall make monthly non-default interest payments to the Pre-Petition Lender in accordance with the Pre-Petition Loan Documents.

h. No Surcharge: No costs or expenses of administration shall be imposed against the Post-Petition Lender's pre-petition or post-petition collateral under section 506(c) of the Bankruptcy Code by any party, including a chapter 7 trustee. No proceeds of the DIP Facility shall be used to prosecute investigation of or proceedings to contest the liens in favor of the Pre-Petition Lender.

i. Budget: As a condition precedent to the DIP Facility, there shall be established a 13 week budget (the "Budget") for the Debtor's cash receipts and expenses (including professional fees and expenses).

j. Cash Collateral: The Debtor shall only be permitted to cash collateral (as defined in section 363(a) of the Bankruptcy Code) in its possession or control arising from, or constituting proceeds of, the Collateral (the "Cash Collateral"), in accordance with the Budget, this Term Sheet and the Order. The Debtor shall establish a cash management system whereby, as of the Effective Date, all cash receipts related to the Property shall be sent directly to a lockbox account established with the Post-Petition Lender. On a daily basis, the Post-Petition Lender will advance all funds from the lockbox account to the Debtor's DIP operating account for the Debtor to use for operating expenses strictly in accordance with the Budget

k. Events of Default: The Events of Default set forth on page 5 of the Term Sheet.

**EXPEDITED MOTION FOR AN ORDER (1) AUTHORIZING THE DEBTOR TO OBTAIN POST PETITION FINANCING PURSUANT TO 11 U.S.C. § 364, (2) GRANTING LIENS AND SUPER-PRIORITY ADMINISTRATIVE EXPENSE STATUS, (3) AUTHORIZING THE FINAL USE OF CASH COLLATERAL PURSUANT TO SECTIONS 105, 361, 362, 363 AND 364 OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001(B), AND (4) GRANTING ADEQUATE PROTECTION TO THE PRE-PETITION SECURED LENDER – PAGE 4**

## II.  JURISDICTION AND VENUE

3. The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334(b). This matter is a core proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory basis for relief requested herein is Sections 105, 361, 362, 363 and 364 of the Bankruptcy Code, and Bankruptcy Rule 4001(b).

## III.  BACKGROUND

5. On January 11, 2011 (the "Petition Date"), the Debtor filed for bankruptcy protection under Chapter 11 of Title 11 of the Bankruptcy Code. Pursuant to Sections 1107 and 1108 of the Bankruptcy Code, the Debtor continues to operate its business and manage its property as a debtor-in-possession.

6. No creditors' committee, other official committee, or Chapter 11 trustee or examiner have been appointed pursuant to 11 U.S.C. § 1102.

7. Oro Partners is a Texas limited liability company. Donald L. Silverman ("Silverman") is the sole manager of the Debtor.

8. Oro Partners owns the Plaza Del Oro Shopping Center (the "Property") in Cockrell Hill, Dallas County, Texas. The Property, which is located on the southwest corner of Cockrell Hill Road and Jefferson Boulevard (4402 W. Jefferson Blvd., Dallas, Texas 75211), is an 83,400 square foot retail neighborhood shopping center.

9. The Debtor purchased the Property in 2008 for the purpose of developing the shopping center. The Property is fully developed and presently leased at approximately 80% capacity and generates a total of $85,000.00 in monthly rents. The Debtor pays approximately $20,000.00 in expenses each month to operate and maintain the Property, leaving a net operating income of approximately $65,000.00.

**EXPEDITED MOTION FOR AN ORDER (1) AUTHORIZING THE DEBTOR TO OBTAIN POST PETITION FINANCING PURSUANT TO 11 U.S.C. § 364, (2) GRANTING LIENS AND SUPER-PRIORITY ADMINISTRATIVE EXPENSE STATUS, (3) AUTHORIZING THE FINAL USE OF CASH COLLATERAL PURSUANT TO SECTIONS 105, 361, 362, 363 AND 364 OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001(B), AND (4) GRANTING ADEQUATE PROTECTION TO THE PRE-PETITION SECURED LENDER – PAGE 5**

10. Upon information and belief, the Property is encumbered by liens presently held by Wells Fargo Bank, N.A. ("Lender"), successor in interest to Wachovia Community Development Enterprises V, LLC ("Wachovia"), the Debtor's pre-petition lender. On or about July 8, 2008, pursuant to the terms of a Construction Loan Agreement (the "Loan Agreement"), the Debtor issued to Wachovia a Promissory Note (the "Senior Note") in the original principal amount of $8,779,500, and a Promissory Note (a New Markets Tax Credit Note, or "NMTC Note;" together with the Senior Note, the "Notes") in the original principal amount of $2,195,500. The term of the Senior Note runs through July 8, 2015. The term of the NMTC Note runs through July 8, 2048. Assuming all monthly payments under the NMTC Note are made, the NMTC Note may be paid off for $21,000 on July 8, 2015.

11. The Debtor believes the balance owed to the Lender pursuant to the Notes was approximately $10,974,000.00 as of the Petition Date. In addition, upon information and belief, the Debtor believes the current value of the real and personal property listed as collateral in the Deeds of Trust securing repayment of the Notes is approximately $13,000,000.00, exceeding the balance due under the Notes. No payment default existed under the Notes as of the Petition Date.

12. At the time the Debtor executed the Loan Agreement, Silverman guaranteed the Notes and provided certain other consideration to Wachovia thereunder. On March 12, 2010, Silverman filed a voluntary petition for personal relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Texas (Case no. 10-31785-HDH-7). Silverman received his discharge by Order entered November 12, 2010. The guaranties of the Notes, including all obligations thereunder, were among the debts discharged in Silverman's personal bankruptcy case.

13. Due to the discharge of the guaranties, in late November, 2010, the Lender declared a default under the Loan Agreement. Pursuant to the terms of the Loan Agreement, the

**EXPEDITED MOTION FOR AN ORDER (1) AUTHORIZING THE DEBTOR TO OBTAIN POST PETITION FINANCING PURSUANT TO 11 U.S.C. § 364, (2) GRANTING LIENS AND SUPER-PRIORITY ADMINISTRATIVE EXPENSE STATUS, (3) AUTHORIZING THE FINAL USE OF CASH COLLATERAL PURSUANT TO SECTIONS 105, 361, 362, 363 AND 364 OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001(B), AND (4) GRANTING ADEQUATE PROTECTION TO THE PRE-PETITION SECURED LENDER – PAGE 6**

Debtor had maintained an escrow account with the Lender in which the Debtor held funds for the payment of tenant improvements (the "Escrow Account"). As of November 2010, the Lender held approximately $580,000.00 in the Escrow Account. Following the Lender's declaration of a default, the Lender froze the Escrow Account and refused to permit the Debtor access to the tenant improvement funds held therein. The withholding of such funds caused the Debtor to be unable to pay the debts intended to be covered by the Escrow Account, including reimbursements to tenants for improvements and commissions to leasing brokers.

14. The Debtor filed this bankruptcy case because it reached an impasse with the Lender. The Debtor generates sufficient revenues each month to make its monthly payments under the Loan Agreement as well as cover all operating expenses. The Debtor's revenues will increase as its occupancy increases. However, the Debtor is unable to increase occupancy due to two main issues: (a) current tenants are complaining about unreimbursed tenant improvement costs and (b) the Debtor must be able to pay leasing commissions to brokers in order to close new lease deals.

15. The Debtor believes it is capable of confirming a plan of reorganization satisfying the claims of the Lender and other claimholders. However, the Debtor is facing difficulties in keeping its current tenants satisfied and in engaging new tenants due to lack of access to the funds frozen by the Lender. Taking a proactive stance, the Debtor filed this case in order to provide the time and forum in which to negotiate with the Lender and resolve the issues facing the Debtor before those problems compound further.

### IV.     REQUEST FOR USE OF CASH COLLATERAL

16. On January 19, 2011, Debtor filed its *Emergency Motion for an Order (I) Authorizing the Use of Cash Collateral, if any, Pursuant to Sections 105, 361, 362, 363 and 364 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001(B) and (II) and (II)*

**EXPEDITED MOTION FOR AN ORDER (1) AUTHORIZING THE DEBTOR TO OBTAIN POST PETITION FINANCING PURSUANT TO 11 U.S.C. § 364, (2) GRANTING LIENS AND SUPER-PRIORITY ADMINISTRATIVE EXPENSE STATUS, (3) AUTHORIZING THE FINAL USE OF CASH COLLATERAL PURSUANT TO SECTIONS 105, 361, 362, 363 AND 364 OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001(B), AND (4) GRANTING ADEQUATE PROTECTION TO THE PRE-PETITION SECURED LENDER – PAGE 7**

*Granting Adequate Protection to the Pre-Petition Secured Lender* (the "Motion") [Doc. No. 13]. The Debtor and Lender entered into an *Agreed Interim Order for Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code and Providing Adequate Protection and Granting Liens and Security Interests* [Doc. No. 26] (the "First Interim Cash Collateral Order"), an *Agreed Second Interim Order for Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code and Providing Adequate Protection and Granting Liens and Security Interests* [Doc. No. 39] (the "Second Interim Cash Collateral Order"), and an *Agreed Third Interim Order for Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code and Providing Adequate Protection and Granting Liens and Security Interests*, uploaded on April 4, 2011 (the "Third Interim Cash Collateral Order").

17. To the extent 11 U.S.C. § 363(c)(2) is applicable, the Debtor requires and now seeks final approval of the use of its cash to pay the reasonable and necessary operating expenses, including, but not limited to, property management, supplies, routine repair and maintenance expenses, leasing commissions, landscaping, and other operating expenses to minimally, preserve, and optimally, increase the value of the collateral and the Debtor for the benefit of all creditors, including the Lender.

### A.     Grounds for Relief Requested.

18. Section 363 of the Bankruptcy Code authorizes a debtor to use cash collateral if those parties having an interest in such cash collateral consent or the court authorizes the use. *See* 11 U.S.C. § 363(c)(2). The use of cash collateral, however, may be prohibited or conditioned, upon proper request, as is necessary to adequately protect any interest in cash collateral. *See* 11 U.S.C. §363(e). The burden, however, to demonstrate that the cash constitutes cash collateral belongs to the party claiming an interest in that cash and is not the Debtor's burden to prove the contrary. *See* 11 U.S.C. § 363(o)(2).

**EXPEDITED MOTION FOR AN ORDER (1) AUTHORIZING THE DEBTOR TO OBTAIN POST PETITION FINANCING PURSUANT TO 11 U.S.C. § 364, (2) GRANTING LIENS AND SUPER-PRIORITY ADMINISTRATIVE EXPENSE STATUS, (3) AUTHORIZING THE FINAL USE OF CASH COLLATERAL PURSUANT TO SECTIONS 105, 361, 362, 363 AND 364 OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001(B), AND (4) GRANTING ADEQUATE PROTECTION TO THE PRE-PETITION SECURED LENDER – PAGE 8**

19. A court may authorize the use of cash collateral upon showing that those with an interest in the cash collateral are adequately protected. *See In re Harrington and Richardson, Inc.*, 48 B.R. 431, 433 (Bankr.D.Mass. 1985); *In re Certified Corp.*, 51 B.R. 768, 770 (Bankr.D.Hawaii 1985) ("It is well established that a debtor is entitled to use cash collateral upon proof of adequate protection."). Adequate protection requires examination of the creditor(s)' aggregate collateral position, not simply protection of its lien on cash. Adequate protection may be provided by granting replacement or additional liens "to the extent [that the use of cash collateral] results in a decrease in the value of [an] entity's interest in property." *See* 11 U.S.C. § 361(2). Authorizing a debtor to use cash collateral is appropriate where, as here, continuing the business as a going concern will cause the generation of future revenues upon which the secured lender is granted replacement liens. *See, e.g., In re Neise, Inc.,* 16 B.R. 600 (Bankr. D. Fla. 1981); *In re Certified Corp.*, 51 B.R. 768 (Bankr.D. Hawaii 1985); *In re Post-Tron Systems, Inc.*, 106 B.R. 345 (Bankr.D.R.I. 1989).

20. By authorizing the Debtor to use cash or cash collateral in its possession, the Court will place the Debtor in a position to fund its operating expenses, and to operate as a going concern during the course of this case. The Debtor needs to use cash or cash collateral, *inter alia*, to fund property maintenance costs, pay suppliers and other vendors, and meet other on-going business obligations. Without the authority to use alleged cash collateral, the Debtor will be unable to fund its operation in a manner that will allow the Debtor to continue to operate as a going concern, to the detriment of *all* of the Debtor's creditors, including the Lender.

21. The Debtor has received authority from the Lender to use cash collateral pursuant to budgets filed with the First, Second, and Third Interim Cash Collateral Orders and is now seeking use of cash collateral on a final basis as set forth in the budget (the "Final Budget") attached hereto as **Exhibit "C"** and incorporated by reference herein. Should the Debtor not be allowed to use cash or cash collateral to fund its day-to-day operations, not only would the

**EXPEDITED MOTION FOR AN ORDER (1) AUTHORIZING THE DEBTOR TO OBTAIN POST PETITION FINANCING PURSUANT TO 11 U.S.C. § 364, (2) GRANTING LIENS AND SUPER-PRIORITY ADMINISTRATIVE EXPENSE STATUS, (3) AUTHORIZING THE FINAL USE OF CASH COLLATERAL PURSUANT TO SECTIONS 105, 361, 362, 363 AND 364 OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001(B), AND (4) GRANTING ADEQUATE PROTECTION TO THE PRE-PETITION SECURED LENDER – PAGE 9**

Debtor and the tenants of the Property be damaged, but also the Lender and the other creditors of the Debtor, including the pool of unsecured creditors. Denying the use of cash or cash collateral would cause immediate and irreparable harm to the reputation, goodwill, and public confidence in the Debtor, a consequence that can only translate into a drastic loss in value as a going concern in the Debtor's highly competitive business. The failure to maintain the Property to the standards the current tenants have the right under their leases to expect could result in the termination of current leases and erode the value of the Property.

B.   **Offer of Adequate Protection.**

22.   The Debtor seeks to use its cash and alleged cash collateral of the Lender as necessary to avoid immediate and irreparable harm to the Debtor's estate and its ongoing operations. Such funds are needed to pay necessary operating expenses. Those amounts are detailed in Exhibit "C".

23.   In addition to the equity in the property, the Debtor seeks authority to grant the Lender, as additional adequate protection to the extent of any diminution in value or usage of the collateral pledged pursuant to the Pre-Petition Loan Documents, replacement liens and security interests in the Collateral, subject only to the DIP Liens granted in such assets to secure the DIP Loan (the "Adequate Protection Liens"). Such Adequate Protection Liens shall not attach to avoidance actions or the proceeds thereof under chapter 5 of the Bankruptcy Code. To the extent the Adequate Protection Liens are insufficient to adequately protect any interest of the Pre-Petition Lender, the Pre-Petition Lender shall be granted a superpriority administrative expense claim and all of the other benefits and protections allowable under section 507(b) of the Bankruptcy Code.

**EXPEDITED MOTION FOR AN ORDER (1) AUTHORIZING THE DEBTOR TO OBTAIN POST PETITION FINANCING PURSUANT TO 11 U.S.C. § 364, (2) GRANTING LIENS AND SUPER-PRIORITY ADMINISTRATIVE EXPENSE STATUS, (3) AUTHORIZING THE FINAL USE OF CASH COLLATERAL PURSUANT TO SECTIONS 105, 361, 362, 363 AND 364 OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001(B), AND (4) GRANTING ADEQUATE PROTECTION TO THE PRE-PETITION SECURED LENDER – PAGE 10**

24. As further adequate protection to the Lender, as included in the Term Sheet, the Debtor additionally seeks to pay the Lender monthly non-default interest payments in accordance with the pre-petition loan documents.

25. The Debtor believes that the terms of the Debtor's cash collateral use, as contained in the proposed Order, are fair and reasonable under the circumstances. The Debtor asserts that the aggregate value of the Lender's alleged cash collateral will not diminish as a result of this use of cash. In addition, it is not anticipated that the value of the Property will diminish during the life of this case. To the contrary, with the proposed use of cash collateral to pay operating expenses will increase the value of the Property. While the value of the Lender's alleged interests in cash may fluctuate, such value should not diminish over the projected life of this case.

26. The Debtor believes that the Lender is entitled to the protections set forth in the proposed Order. The adequate protection provisions have been drafted to provide protection without taking undue or inappropriate value from the bankruptcy estate and its unsecured creditors.

27. Given that the interests of the Lender will be adequately protected, it is in the best interest of the Debtor, its estate, and all of its creditors for the Debtor to be able to continue operations and that the Debtor is authorized to use cash or cash collateral, even without the Lender's consent.

### V. REQUEST FOR POST-PETITION FINANCING

28. The Debtor hereby requests entry of an Order authorizing the Debtor to obtain post-petition financing pursuant to 11 U.S.C. § 364 and granting liens and super-priority administrative expense status.

**EXPEDITED MOTION FOR AN ORDER (1) AUTHORIZING THE DEBTOR TO OBTAIN POST PETITION FINANCING PURSUANT TO 11 U.S.C. § 364, (2) GRANTING LIENS AND SUPER-PRIORITY ADMINISTRATIVE EXPENSE STATUS, (3) AUTHORIZING THE FINAL USE OF CASH COLLATERAL PURSUANT TO SECTIONS 105, 361, 362, 363 AND 364 OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001(B), AND (4) GRANTING ADEQUATE PROTECTION TO THE PRE-PETITION SECURED LENDER – PAGE 11**

**A.      The Debtor's Need for Financing.**

29.     The Debtor requests authority to obtain post-petition financing from the Lender. As set forth in the Term Sheet, the DIP Loan will be used to pay the 2010 ad valorem taxes related to the Property and for reimbursement of approved pre-petition tenant improvements and leasing commissions related to the Property in the approximate amount of $142,000.00.  The balance of the DIP Loan shall be deposited in the Debtor's DIP operating account at Wells Fargo Bank, N.A., and will be available to the Debtor to pay/reimburse post-petition tenant improvements and leasing commissions related to the Property, provided, however, that the Debtor shall obtain (a) prior written approval from the Post-Petition Lender for such payments, or, if the Post-Petition Lender does not consent to such payments, (b) approval from the Bankruptcy Court for such payments.

30.     The requested relief is necessary for the Debtor to continue the operation of its business as Debtor-in-possession, to preserve the going-concern value of its assets, and to minimize the disruption of the Debtor's business as a going concern.  The Debtor will suffer irreparable harm unless it is authorized to obtain financing in the amount and on the terms and conditions set forth in the Order.

31.     Subject to the terms and conditions set forth in the Order, the Lender is willing to make advances to the Debtor in the aggregate amount of up to $587,647.36 (the "DIP Loan") to allow the Debtor to continue to operate as a going concern.

**B.      Summary of Relief Sought.**

32.     The Debtor seeks authorization to obtain, on an expedited basis, secured, post-petition financing on terms as outlined in the Term Sheet substantially in the form attached hereto as Exhibit "B" and incorporated herein by reference.  Specifically, the Debtor seeks the

EXPEDITED MOTION FOR AN ORDER (1) AUTHORIZING THE DEBTOR TO OBTAIN POST PETITION FINANCING PURSUANT TO 11 U.S.C. § 364, (2) GRANTING LIENS AND SUPER-PRIORITY ADMINISTRATIVE EXPENSE STATUS, (3) AUTHORIZING THE FINAL USE OF CASH COLLATERAL PURSUANT TO SECTIONS 105, 361, 362, 363 AND 364 OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001(B), AND (4) GRANTING ADEQUATE PROTECTION TO THE PRE-PETITION SECURED LENDER – PAGE 12

entry of a final order authorizing (a) the Debtor to enter into the Term Sheet, (b) obtain the post-petition financing contemplated therein in one or more advances from the Lender under the DIP Loan, (c) to pay all interest, fees, expenses, and other obligations provided for under the Order and the DIP Facility, and (d) to satisfy all conditions precedent and perform all obligations thereunder in accordance with the terms thereof.

33. A condition to the willingness of the Lender to fund the DIP Loan is that the Lender receive first priority security interests and liens pursuant to section 364(c)(2) and (d)(1) of the Bankruptcy Code (the "DIP Liens") in and on all real and personal property (including all proceeds, products, rents, revenues and profits thereof) of the Debtor and the Debtor's bankruptcy estate, whether tangible or intangible, whether now existing or hereafter acquired, and whether encumbered or unencumbered as of the Petition Date (the "Collateral"). The DIP Liens shall be valid and enforceable notwithstanding any infirmity, avoidance, or other issue making the Pre-Petition Lender's liens unenforceable.

34. Notwithstanding the foregoing provisions, the DIP Liens shall not attach to any of the following property: (i) any causes of action, including causes of action or claims pursuant to Sections 544, 545, 547, 548, 550, or 553 of the Bankruptcy Code (the "Avoidance Actions"); and (ii) any monies recovered in connection with the successful prosecution or settlement of Avoidance Actions or any other causes of action held by the Debtor's estates (collectively, the "Avoidance Proceeds").

35. Pursuant to the Order, the DIP Loan will be granted administrative priority in accordance with, and shall constitute an allowed super-priority claim (the "Super-Priority Claim") pursuant to the provisions of Section 364(c)(1) and 364(d) of the Bankruptcy Code with priority over all other administrative expenses in the Debtor's bankruptcy case.

**EXPEDITED MOTION FOR AN ORDER (1) AUTHORIZING THE DEBTOR TO OBTAIN POST PETITION FINANCING PURSUANT TO 11 U.S.C. § 364, (2) GRANTING LIENS AND SUPER-PRIORITY ADMINISTRATIVE EXPENSE STATUS, (3) AUTHORIZING THE FINAL USE OF CASH COLLATERAL PURSUANT TO SECTIONS 105, 361, 362, 363 AND 364 OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001(B), AND (4) GRANTING ADEQUATE PROTECTION TO THE PRE-PETITION SECURED LENDER – PAGE 13**

36. The Debtor believes that good cause has been shown for the entry of the Order to obtain the DIP Loan pending a final hearing on the relief requested herein pursuant to Bankruptcy Rules 4001(c) and (d). The Debtor's need for financing of the type requested herein and as afforded by the Order is immediate and critical. Entry of the Order will minimize disruption of the Debtor's operations and business as a going concern, will preserve the assets of the Debtor's estate, and is in the best interests of the Debtor, its creditors, and its estate.

37. The Debtor further believes that the terms of the financing are fair and reasonable, reflect the Debtor's reasonable exercise of prudent business judgment, and are supported by reasonably equivalent value and fair consideration. The interests of the Debtor and the Lender in its pre-petition collateral are adequately protected under the terms and conditions of the Order.

38. The DIP Loan is necessary to maintain the value of the Debtor's assets, including going-concern value, and the ability to continue its business and reorganize its obligations. For the foregoing reasons, it is necessary for the Debtor to have a post-petition credit facility.

**C.    Basis for Relief Requested.**

39. As described above, it is essential to the Debtor's operations that it be granted immediate access to funds. Absent access to the financing that will be available to the Debtor under the proposed DIP Loan, the Debtor will be unable to maintain its business operations, preserve the value of its assets, reimburse tenant improvement expenses or pay property taxes.

40. The Debtor believes that the terms and conditions of the Term Sheet and the Order, and the related relief requested herein are fair, reasonable, and in the best interests of the Debtor, its estate, and creditors.

41. <u>Approval Under Section 364(c) of the Bankruptcy Code.</u>  Section 364 of the Bankruptcy Code allows the Debtor to (a) obtain unsecured credit in the ordinary course of

**EXPEDITED MOTION FOR AN ORDER (1) AUTHORIZING THE DEBTOR TO OBTAIN POST PETITION FINANCING PURSUANT TO 11 U.S.C. § 364, (2) GRANTING LIENS AND SUPER-PRIORITY ADMINISTRATIVE EXPENSE STATUS, (3) AUTHORIZING THE FINAL USE OF CASH COLLATERAL PURSUANT TO SECTIONS 105, 361, 362, 363 AND 364 OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001(B), AND (4) GRANTING ADEQUATE PROTECTION TO THE PRE-PETITION SECURED LENDER – PAGE 14**

business, (b) obtain unsecured credit out of the ordinary course of business, and (c) obtain credit with specialized priority or with security. If a debtor-in-possession cannot obtain post-petition credit on an unsecured basis, the Court may authorize the obtaining of credit or the incurring of debt, repayment of which is entitled to super-priority administrative expense status or is secured by a lien on unencumbered property, or a combination of the foregoing.

42. The statutory requirement for obtaining post-petition credit under Section 364(c) is a finding, made after notice and hearing, that the Debtor are "unable to obtain unsecured credit allowable under section 503(b)(1) of [the Bankruptcy Code]." *In re Plabell Rubber Prods., Inc.*, 137 B.R. 897, 900 (Bankr. N.D. Ohio 1992) (the debtor must show "by a good faith effort that credit was not available without" the protections of Section 364(c)). Section 364(c) financing is appropriate when the trustee or debtor-in-possession is unable to obtain unsecured credit allowable as an ordinary administrative claim. *See In re Crouse Group, Inc.*, 71 B.R. 544, 549, *modified on other grounds*, 75 B.R. 553 (Bankr. E.D. Pa. 1987) (secured credit under Section 364(c)(2) is authorized, after notice and hearing, upon showing that unsecured credit cannot be obtained).

43. Courts have articulated a three-part test to determine whether a debtor is entitled to Section 364(c) financing:

    (a)     The debtor is unable to obtain unsecured credit under Section 364(b) (*i.e.*, by allowing a lender only an administrative claim);

    (b)     The credit transaction is necessary to preserve the assets of the estate; and

    (c)     The terms of the transaction are fair, reasonable, and adequate given the circumstances of the debtor and the proposed lender.

*See Crouse Group*, 71 B.R. at 549. Additionally, courts will generally accord significant weight to the necessity of the debtor obtaining post-petition financing in order to remain viable. *See In*

**EXPEDITED MOTION FOR AN ORDER (1) AUTHORIZING THE DEBTOR TO OBTAIN POST PETITION FINANCING PURSUANT TO 11 U.S.C. § 364, (2) GRANTING LIENS AND SUPER-PRIORITY ADMINISTRATIVE EXPENSE STATUS, (3) AUTHORIZING THE FINAL USE OF CASH COLLATERAL PURSUANT TO SECTIONS 105, 361, 362, 363 AND 364 OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001(B), AND (4) GRANTING ADEQUATE PROTECTION TO THE PRE-PETITION SECURED LENDER – PAGE 15**

*re Snowshoe Co.*, 789 F.2d 1085, 1088 (4th Cir. 1986); *In re Ames Dep't Stores*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990).

44. As noted above, the need for the Debtor to obtain financing is critical. Further, the evidence at the hearing, if necessary, will show that a working capital facility of the type needed in this Chapter 11 case could not have been obtained on an unsecured basis.

45. <u>The Debtor Does Not Have an Alternative to the DIP Loan</u>. If necessary, the evidence at the hearing will show that a capital facility of the type needed in this case could not have been obtained on an unsecured basis. Indeed, the potential sources of a credit facility for the Debtor, obtainable on an expedited basis and on reasonable terms, are practically nonexistent. In these circumstances, "[t]he statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable." *In re Snowshoe Co.*, 789 F.2d at 1088.

46. A debtor need only demonstrate "by a good faith effort that credit was not available without" the protections of Section 364(c). *Id.*; *In re Plabell*, 137 B.R. at 900. Where there are few lenders likely to be able and/or willing to extend the necessary credit to the debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct an exhaustive search for financing." *In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), *aff'd sub nom*, *Anchor Sav. Bank FSB v. Sky Valley*, 99 B.R. 1997, 120 n.4 (N.D. Ga. 1989). Thus, the evidence introduced at the hearing will satisfy the requirement of Section 364(c) that unsecured credit was unavailable to the Debtor.

47. The filing of the Debtor's bankruptcy petition was precipitated by its need for, and its inability to gain access to, the approximately $580,000 in funds proposed to be advanced under the DIP Facility. Given this fact, the Debtor has concluded that, in its business judgment, it was not practicable to try to "shop" the DIP Loan to every possible lender. Only the Lender,

**EXPEDITED MOTION FOR AN ORDER (1) AUTHORIZING THE DEBTOR TO OBTAIN POST PETITION FINANCING PURSUANT TO 11 U.S.C. § 364, (2) GRANTING LIENS AND SUPER-PRIORITY ADMINISTRATIVE EXPENSE STATUS, (3) AUTHORIZING THE FINAL USE OF CASH COLLATERAL PURSUANT TO SECTIONS 105, 361, 362, 363 AND 364 OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001(B), AND (4) GRANTING ADEQUATE PROTECTION TO THE PRE-PETITION SECURED LENDER – PAGE 16**

which is already intimately familiar with the Debtor's business operations, corporate structure, financing arrangements, and collateral base, and which has already performed the necessary due diligence in connection with the Term Sheet, was able to offer a post-petition credit facility to meet the Debtor's capital needs on the terms, and within the time frame, that the Debtor needed.

48. <u>Application of the Business Judgment Standard</u>. As described above, the Debtor has concluded that the DIP Loan identified in the Term Sheet and the Order provide the only alternative available under the circumstances. Bankruptcy courts routinely defer to the debtor's business judgment on most business decisions, including the decision to borrow money. *See Group of Institutional Investors v. Chicago Mil. St. P. & Pac. Ry.*, 318 U.S. 523, 550 (1943); <u>Ames</u>, 115 B.R. at 38 (in examining requests by a debtor for financing, courts apply the same business judgment standard applicable to other business decisions); <u>In re Simasko Prod. Co.</u>, 47 B.R. 444, 449 (D. Colo. 1985) ("Business judgments should be left to the board room and not to this Court."); *In re Lifeguard Indus., Inc.*, 37 B.R. 3, 17 (Bankr. S.D. Ohio 1983) (same). "More exacting scrutiny would slow the administration of the debtor's estate and increase its costs, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially." *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985).

49. In general, a bankruptcy court should defer to a debtor-in-possession's business judgment regarding the need for and the proposed use of funds, unless such decision is arbitrary and capricious. *See In re Curlew Valley Assoc.*, 14 B.R. 506, 511-13 (Bankr. D. Utah 1981). Courts generally will not second-guess a debtor-in-possession's business decisions when those decisions involve "a business judgment made in good faith, upon a reasonable basis, and within the scope of [its] authority under the Code." *Id.*, at 513-14 (footnotes omitted).
**EXPEDITED MOTION FOR AN ORDER (1) AUTHORIZING THE DEBTOR TO OBTAIN POST PETITION FINANCING PURSUANT TO 11 U.S.C. § 364, (2) GRANTING LIENS AND SUPER-PRIORITY ADMINISTRATIVE EXPENSE STATUS, (3) AUTHORIZING THE FINAL USE OF CASH COLLATERAL PURSUANT TO SECTIONS 105, 361, 362, 363 AND 364 OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001(B), AND (4) GRANTING ADEQUATE PROTECTION TO THE PRE-PETITION SECURED LENDER – PAGE 17**

50. The Debtor has exercised sound business judgment in determining that a post-petition credit facility is appropriate and has satisfied the legal prerequisites to borrow under the Term Sheet and the Order. The terms of the DIP Loan are fair and reasonable and are in the best interests of the Debtor's estate. Accordingly, the Debtor should be granted authority to borrow funds from the Lender on the secured, administrative super-priority basis described above, pursuant to Section 364(c) of the Bankruptcy Code, and take the other actions contemplated by the Order as requested herein.

51. <u>Good Faith</u>. Section 364(e) was designed to "encourage the extension of credit to debtors" by allowing lenders to "rely on a bankruptcy court's authorization of the transaction." *In re EDC Holding Co.*, 676 F.2d 945, 947 (7th Cir. 1982) (the purpose of Section 364(e) is "to overcome people's natural reluctance to deal with a bankrupt firm whether as purchaser or lender by assuring them that so long as they are relying in good faith on a bankruptcy judge's approval of the transaction they need not worry about their priority merely because some creditor is objecting to the transaction and is trying to get the district court or the court of appeals to reverse the bankruptcy judge."). *See also In re North Atlantic Millwork Corp.*, 155 B.R. 271, 279 (Bankr. D. Mass. 1993) ("The purpose of section 364(e) is to allow good-faith lenders to rely upon conditions at the time they extend credit and to encourage lenders to lend to bankrupt entities.").

52. The DIP Loan is and will be the result of good faith and arm's-length negotiations, with all parties represented by counsel. The Debtor believes that the terms of the DIP Loan are fair and reasonable under the circumstances, and that Lender is entitled to the benefits of Section 364(e) of the Bankruptcy Code.

**EXPEDITED MOTION FOR AN ORDER (1) AUTHORIZING THE DEBTOR TO OBTAIN POST PETITION FINANCING PURSUANT TO 11 U.S.C. § 364, (2) GRANTING LIENS AND SUPER-PRIORITY ADMINISTRATIVE EXPENSE STATUS, (3) AUTHORIZING THE FINAL USE OF CASH COLLATERAL PURSUANT TO SECTIONS 105, 361, 362, 363 AND 364 OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001(B), AND (4) GRANTING ADEQUATE PROTECTION TO THE PRE-PETITION SECURED LENDER – PAGE 18**

## VI. NOTICE

53. Notice of this Motion has been given via the Court's electronic transmission facilities or via United States mail, first class delivery on the parties included on the attached service list.

In conclusion, the Debtor respectfully requests entry of a final order substantially in the form of the proposed Order attached hereto as Exhibit A, and granting such other relief and further relief as the Court may deem proper.

Dated: April 14, 2011

Respectfully submitted,

By: /s/ Vickie L. Driver
Vickie L. Driver
State Bar No. 24026886
Alexandra P. Olenczuk
State Bar No. 24033924
Courtney J. Hull
State Bar No. 24061297
**Coffin & Driver, PLLC**
7557 Rambler Road, Suite 110
Dallas, Texas 75231
Telephone: 214.377.4848
Facsimile: 214.377.4858
Email: vdriver@coffindriverlaw.com
Email: aolenczuk@coffindriverlaw.com
Email: chull@coffindriverlaw.com

**COUNSEL FOR DEBTOR**

### CERTIFICATE OF CONFERENCE

I, the undersigned, hereby certify that, on April 13 and 14, 2011, I discussed the relief sought in this motion with Matt Ferris, counsel for Lender. Lender supports entry of the proposed Order.

/s/ Vickie L. Driver
Vickie L. Driver

## CERTIFICATE OF SERVICE

      I, the undersigned, hereby certify that, on April 14, 2011 I caused to be served the foregoing pleading upon the parties on the attached service list via the Court's electronic transmission facilities and/or United States mail, first class delivery.

                                                /s/ Alexandra P. Olenczuk
                                                Alexandra P. Olenczuk